LYNN GAVIN
1230 Market Street, #4
San Francisco, CA 94102
(415) 286-2528

Plaintiff in propria persona

FILED

NOV 1 5 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

KAW

| | |
|---|---|
| LYNN GAVIN AND DOES 1 – 10, inclusive, | Case No.: 12 5864 |
| Plaintiffs, | COMPLAINT OF PLAINTIFF LYNN GAVIN AND DOES 1 – 10 FOR: |
| v. | |
| BARTHOLOME MURPHY #127732) MICHAEL J. ANTONINI; RICH HILLIS; GWYNETH BORDEN; RODNEY FONG; DAVID CHIU; ERIC MAR; CARMEN CHU; MALIA COHEN; SCOTT WIENER; SEAN ELSBERND; MARK FARRELL; CHARLES SULLIVAN; CHARLES SULLIVAN; CHERYL SUSANA ADAMS; MICHAEL YARNE; JENNIFER MATZ; JUDSON TRUE; STEVE KAVA; JERRY THREET; ROSS MIRKARIMI; JANE KIM; DENNIS JOSE HERRERA; GEORGE GASCÓN; CHARLES SULLIVAN; YVONNE MERÉ; WILLIE BROWN JR.; GAVIN NEWSOM; KAMLA HARRIS ANGELA CAVILLIO; MICKI CALLAHAN; MADELEINE LICOVOLI; ED HARRINGTON; BEVAN DUFFY; OLSEN LEE; BRIAN SMITH; LULU HWANG; JOHN RAHAIM; LINDA AVERY; RICHARD COOPER; KEITH | 1. DECLARATORY RELIEF 2. INJUNCTIVE RELIEF; 3. FRAUD; 4. NEGLIGENCE; 5. BREACH OF CONTRACT; 6. INTENTIONAL TORT; 7. PREMISES LIABILITY; 8. PRODUCTS LIABILITY; 9. BREACH OF IMPLIED COVENANT OF FAIR DEALING; 10. PROMISSORY ESTOPPEL; 11. MISTAKE; 12. DURESS; 14. RETALIATORY EVICTION;; 15. DEPRIVATION OF BOARD; CIVIL RIGHTS 16. DISCRIMINATION UNDER FEDERAL GRANTS AND PROGRAM; 17. DEPRIVATION OF HOUSING ACCOMODATIONS [CAL. CIV. CODE § 54.1]; 18. ABUSE OF PROCESS; |

| | |
|---|---|
| 1 | DEMARTINI; ELIZABETH ) |
| 2 | WATTY; TONY DESOTO; ) |
| | RON VINSON; JON WALTON; ) |
| 3 | JACK CHAN; ) |
| | MATT LASKY; PETER ALBERT; ) |
| 4 | JESSICA MANZI; JOSÉ LUIS ) |
| 5 | MOSCOVICH; CHESTER FUNG; ) |
| | MAYOR'S OFFICE OF HOUSING; ) |
| 6 | OFFICE OF HOMELESS CZAR; ) |

```
 1  DEMARTINI; ELIZABETH      )
 2  WATTY; TONY DESOTO;       )
    RON VINSON; JON WALTON;   )
 3  JACK CHAN;                )
    MATT LASKY; PETER ALBERT; )
 4  JESSICA MANZI; JOSÉ LUIS  )
 5  MOSCOVICH; CHESTER FUNG;  )
    MAYOR'S OFFICE OF HOUSING; )
 6  OFFICE OF HOMELESS CZAR;  )
    CLERK OF THE BOARD;       )      19. CONVERSION;
 7  OFFICE OF THE MAYOR       )      20. SALE OF STOLEN GOODS;
 8  OF SAN SAN FRANCISCO;     )      21. DEFAMATION OF CHARACTER;
    OFFICE OF THE CITY        )      22. SLANDER;
 9  ATTORNEY OF SAN           )      23. LIBEL;
    FRANCISCO; OFFICE OF      )      24. INTENTIONAL INFLICTION OF
10  THE DISTRICT ATTORNEY OF  )          EMOTIONAL DISTRESS;
11  SAN FRANCISCO; BOARD      )      25. UNFAIR COMPETITION;
    OF SUPERVISORS OF SAN     )      26. INTENTIONAL INTERFERENCE WITH
12  FRANCISCO; OFFICE OF      )          PROSPECTIVE BUSINESS ADVANTAGE;
    WORKFORCE ECONOMIC        )      27. CIVIL CONSPIRACY [CIVIL R.I.C.O.];
13  DEVELOPMENT OF SAN        )      28. DEPRIVATION OF RIGHTS [42 U.S.C. §
14  FRANCISCO; SAN FRANCISCO  )          1983; U.S. Const. and Amendments 1, 4, 5, 6, 8
    PLANNING DEPARTMENT; SAN  )          14];
15  FRANCSICO PUC; SF PLANNING )     29. QUASI-CONTRACT;
    COMMISSION; SF CITY AND   )
16  COUNTY DEPT OF TECHNOLOGY)
17  SAN FRANCISCO COUNTY      )
    TRANSPORTATION AUTHORITY )
18  RONALD EVANS QUIDACHAY;   )      30. FALSE CLAIMS [QUI TAM];
    SAN HOUSING AUTHORITY     )      31. NUISANCE;
19  FRANCISCO HOUSING         )      32. UNLAWFUL DETAINER;
20  HENRY ALVAREZ III;        )      33. TRESPASS;
     NICOLE MC CRAY-          )      34. FORCIBLE ENTRY;
21  DICKERSON; BARBARA SMITH; )      35. WRONGFUL FORFEITURE;
    AMOS BROWN; LINDA         )      36. WRONGFUL EJECTMENT;
22  MARTIN; LEI ROCHELLE      )      37. WRONGFUL LIBRARI FACIAS;
23  JOHNSON; MIRIAN SAEZ;     )      38. WRONGFUL WILLFUL BLINDNESS TO
    MATTHEW SCHWARTZ;         )          LAW [e.g., ALL WRITS ACT [28 U.S.C. §
24  VERONICA HUNNICUTT;       )          1651]];
25  AHSHA SAFAI; DOROTHY      )      39. UNCONSCIONABILITY;
    SMITH; MICHAH ALLEN;      )      40. ABATEMENT;
26  DONALD SMITH;             )      41. ACCOUNTING; AND
    GREG FORTNER; TONY        )      42. INTERPLEADER.
27  UCCIFERI; DIANA D. FARSAI; )
28  CHARLES HAUPTMAN; MELINA )
    WHITEHEAD; MARTHA RUIZ;   )
```

~ - 2 - ~

1   ELAINE TARAPE; BRYAN                 )
2   SMITH; OPHELIA BASGAL;               )
    GERARD WINDT; HUD WEST               )
3   COAST; HELEN R. KANOVSKY;            )
    SHAUN DONOVAN; HUD DC;               )
4   PARKMERCED                           )
5   INVESTORS, LLC; STELLAR              )
    MANAGEMENT; GREYSTAR                 )
6   MANAGEMENT SERVICES, L.P.;           )
    BILL MADDUX;                         )
7   DEREK RAMSEY;                        )
    DANIEL MUDD;                         )
8   SETH MALLEN; DONNA STERN;            )
9   BERT POLACCI; PJ JOHNSTON;           )
    DIDI MACDONALD;                      )
10  DANIEL R. STERN 159892;              )
11  DAVID P. WASSERMAN #171923;          )
    JULIE ANDERSON; BRYCE                )
12  BODDIE; STEPHEN TINDLE;              )
    RAMON GODINEZ-ESTRADA;               )
13  STONESTOWN MERCHANT                  )
14  ASSOCIATION; ROBERT                  )
    CORRIGIAN; CHARLES REED;             )
15  CSU BOARD OF TRUSTEES;               )
    NATHANAEL DAVID                      )
16  PLAYER #264920;                      )
17  AND DOES  1 – 100, inclusive;        )
                                         )
18      Defendants.                      )
                                         )
19  _____    )

20      COMES NOW plaintiff Lynn Hambolu and does 1 – 10 ("Plaintiff Hambolu") and

21  alleges as follows:

22                          INTRODUCTION

23      1.      Plaintiff Gavin, a single parent with children and qui tam plaintiff, hereby

24  incorporates by reference into this Verified Complaint ("Verified Complaint") Plaintiff Gavin's

25  Complaint ("Complaint") from Lynn Gavin v. Parkmerced Investors Properties LLC, United

26  States District Court Northern District of California ("USDC").

27

28

2.     The allegations in this Verified Complaint stated on information and belief are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Id.

3.     Plaintiff Gavin never would have moved into Plaintiff Gavin's residence at Parikmerced in San Francisco, California ("Residence") if Plaintiff Gavin had known that defendants in the instant case ("Defendants") planned to demolish the Residence.

4.     Plaintiff Gavin is informed and believes and thereon alleges that, at all times herein mentioned, Does 1 – 100 were the agents of Defendants and in doing the things hereinafter alleged, were acting in the scope of such agency and with the permission and consent of Defendants. Id.

5.     On March 1, 2010, Plaintiff Gavin signed as the tenant a lease ("Lease") for Plaintiff Gavin's residence at 22 Grijalva Drive, San Francisco, CA 94132 ("Home") with Defendants Properties LLC ("Defendants") as the landlord.  See Exhibit B, Lease, attached hereto.

6.     This lawsuit should be assigned to the United States District Court because the lawsuit involves issues of federal law.

7.     Plaintiff Gavin has multiple disabilities.

8.     Plaintiff Gavin relies on respiratory medical equipment to aid in breathing and a walker and wheelchair to aid in easing pain in Plaintiff Hambolu's body.

9.     Defendants are a Delaware Limited Liability Company and have had multiple turnovers with office personnel since March 2010.

10.     Plaintiff Gavin has experienced violations of federal rights under, among others, the American with Disabilities Act, section 504 by Defendants' intentional refusal to provide

11.     Defendants denied Plaintiff Gavin's requests for meaningful access to and reasonable accommodations in Plaintiff Gavin's Home including a parking space near Plaintiff Gavin's Home and grab bars in Plainitff Gavin's Home's bathroom due to Plaintiff Gavin's handicaps.  Ibid.

12.     Plaintiff Gavin has experienced violations of federal rights under, among others, 42 U.S.C. § 1983 and the Fourteenth Amendment to the Constitution of the United States for Defendants' denial of services, refusals to provide Plaintiff Gavin with meaningful access to and reasonable accommodations in Plaintiff Gavin's Home including grab bars in Plainitff Gavin's Home's bathroom and a parking space near Plaintiff Gavin's Home due to Plaintiff Hambolu's handicaps ("Defendants' Wrongful Conduct").

13.     Defendants' Wrongful Conduct escalated during Plaintiff Gavin's Lease culminating in a wrongful eviction based on different claims of billed utility charges in wrongfully posted three day notices on August 24, 2011 and September 19, 2011 due to Plaintiff Gavin's handicaps that was arbitrary, unreasonable and discriminatory.  Id.

14.     The events that occurred between July 9, 2012 and July 25, 2012 relating to Defendants' efforts to evict wrongfully Plaintiff Gavin from her Home have adversely impacted and continue to impact adversely Plaintiff Gavin's health including hospitalization on July 25, 2012 and October 28 to 30, 2012.

15.     Plaintiff Gavin is in a protected class of persons who live below the federal poverty line.

16.     Plaintiff Gavin is a handicapped person due to Plaintiff Gavin's medical conditions.

17.     Plaintiff Gavin's medical conditions substantially limit her major life activities including performing manual tasks, walking, breathing, sleeping and working.

18.     Plaintiff Gavin's primary care physician at UCSF Medical Center/UCSF Benioff Children's Hospital Amiesha S. Panchal, M.D. ("Dr. Panchal") described in a July 31, 2012 letter ("Letter") Plaintiff Gavin's medical condition as chronic.  See Exhibit C, Letter, attached hereto ("Exhibit D").

19.     Plaintiff Gavin has a pet rabbit named Sir Daniel that Dr. Panchal stated in the letter helps Plaintiff Gavin greatly with a chronic medical condition.  See Exhibit D.

20.     Dr. Panchal requested in the Letter that Sir Daniel be designated as a service animal.  See Exhibit D.

21.     Plaintiff Gavin is qualifed as a handicapped person to receive Section 8 housing assistance federal program funds ("Section 8") and housing services from Defendants free from discrimination from Defendants or from any other source based on Plaintiff Gavin's handicaps or medical conditions.

22.     Defendants receive funds from Section 8.

23.     Defendants impermissibly discriminated against Plaintiff Gavin on the basis of Plaintiff Gavin's handicaps during the term of the Lease and subsequent to the wrongful eviction of Plaintiff Gavin from her Home.

24.     Defendants have continued after Defendants' wrongful eviction of Plaintiff Gavin from her Home on July 25, 2012 to discriminate impermissibly against Plaintiff Gavin on the basis of Plaintiff Gavin's handicaps to the present and continuing.

25.     Plaintiff Gavin's medical condition requires Plaintiff Gavin to live in a walkable community without hills to receive health benefits that a walkable community without hills affords Plaintiff Gavin.

26.     Plaintiff Gavin's Home is situated in a walkable community.

27.     Plaintiff Gavin enjoyed access to public transportation while living in her Home.

28.     Plaintiff Gavin's health benefitted from living in her Home.

29.     Plaintiff Gavin's medical condition requires Plaintiff Gavin to use a machine that helps Plaintiff Gavin breathe when Plaintiff Gavin is sleeping.

30.     Plaintiff Gavin's medical condition requires Plaintiff Gavin to use a wheelchair, walker and cane as needed to ease pain.

31.     Plaintiff Gavin's medical condition compelled Plaintiff Gavin to request from Defendants during the term of the Lease the installation of grab bars in Plaintiff Gavin's bathroom in Plaintiff Gavin's Home that Defendants refused to install ("Grab Bar Request").

32.     Plaintiff Gavin alleges Defendants impermissibly discriminated and continues to discriminate impermissibly against Plaintiff Gavin on the basis of Plaintiff Gavin's handicaps in response to Plaintiff Gavin's Grab Bar Request.

33.     Plaintiff Gavin's medical condition compelled Plaintiff Gavin to request from Defendants during the term of the Lease the designation of a parking space near Plaintiff Gavin's Home to accommodate Plaintiff Gavin's handicaps that Defendants refused to designate ("Parking Space Request").

34.     Plaintiff Gavin alleges Defendants impermissibly discriminated and continues to discriminate impermissibly against Plaintiff Gavin on the basis of Plaintiff Gavin's handicaps in response to Plaintiff Gavin's Parking Space Request.

35.   Defendants did not disclose to Plaintiff Gavin that Defendants wanted to demolish Plaintiff Gavin's Home for Defendants' own use for Defendants' as yet undisclosed reasons.

36.   No meters exist around Plaintiff Gavin's Home to measure water use for each residence.

37.   A formula to measure water use for Defendant Gavin's Home exists in Defendant Gavin's Lease that the Lease does not explain very well.

38.   Plaintiff Gavin's Home was newly renovated.

39.   Plaintiff Gavin alleges in Plaintiff Gavin's opinion that Defendants wrongfully evicted Plaintiff Gavin from Plaintiff Gavin's Home in retaliation for Plaintiff Gavin asserting her tenant rights.

40.   Defendants refused to assure Plaintiff Gavin meaningful access to and reasonable accommodations in Plaintiff Gavin s Home that Plaintiff Gavin requested from Defendants.

41.   Instead of providing Plaintiff Gavin with meaningful access to and reasonable accommodations in Plaintiff Gavin's Home as Plainitff Gavin requested, Defendants chose to evict Plaintiff Gavin denying her Section 8 benefits based on Defendants' claim that Plaintiff Gavin owed Defendants some differing amounts of money for unpaid water use ("Wrongful Eviction").

42.   Defendants indicate in Defendants' August 24, 2011 unsigned three day notice to perform covenant or quit that Plaintiff Gavin owes $1,586.72 in billed utility charges and a lesser amount of billed utility charges in the amount of $1121.92 in the second signed September 19, 2011 three day notice to quit ("Wrongful Three Day Notices").

43.   Plaintiff Gavin alleges Defendants excluded Plaintiff Gavin from receiving reasonable landlord services from Defendants including meaningful access to Plaintiff Gavin's

Home, reasonable accommodations in Plaintiff Gavin's Home and reasonable and accurate billing services from Defendants due to Plaintiff Gavin's handicaps.

44.     Plaintiff Gavin's attorney in the unlawful detainer case Defendants filed against Plaintiff Gavin in San Francisco Superior Court did not file a cross-complaint against Defendants.

45.     Defendants may attempt to lease Plaintiff Gavin's Home to another tenant at an as yet undisclosed amount.

46.     Defendants took Plaintiff Gavin's Home, belongings, personal items, food, clothing and medical support equipment ("Property") leaving Plaintiff Gavin with the clothes Plaintiff Gavin was wearing, a walking cane and some other effects Plaintiff Gavin happened to be carrying with her at that time.

47.     Defendants' wrongful denial of Plaintiff Gavin's Grab Bar and Parking Space Requests have caused Plaintiff Gavin to endure painful medical and physical difficulties that resulted in and continue to result in cruel and unusual punishment simply for Plaintiff Gavin requesting meaningful access and reasonable accommodations in Plaintiff Gavin's Home.

48.     Defendants' Wrongful Eviction of Plaintiff Gavin, who Plaintiff Gavin believes based on information and belief is the only tenant at the Parkmerced development who requested a jury trial among those Defendants attempted to evict of 197 three day notices Defendants issued in 2011, from Plaintiff Gavin's Home and subsequent wrongful seizure of Plaintiff Gavin's belongings have caused Plaintiff Gavin to endure painful medical and physical difficulties that resulted in and continue to result in cruel and unusual punishment simply for Plaintiff Gavin requesting meaningful access and reasonable accommodations in Plaintiff Gavin's Home.

49.     Plaintiff Gavin asserts that Defendants wrongfully initiated eviction against Plaintiff Gavin and wrongfully evicted Plaintiff Gavin to harass Plaintiff Gavin in retaliation, among other things, for Plaintiff Gavin requesting meaningful access to and reasonable accommodations in Plaintiff Gavin's Home according to Plaintiff Gavin's handicaps.

50.     Plaintiff Gavin asserts that Defendants prematurely filed an unlawful detainer action against Plaintiff Gavin fraudulently claiming that Plaintiff Gavin owed Defendants utility fees as stated in the Wrongful Three Day Notices.

51.     Plaintiff Gavin is legally disabled as Plaintiff Gavin's doctor has diagnosed Plaintiff Gavin's disabilities and the United States Social Security Administration has determined that Plaintiff Hambolu is disabled.  See Exhibit D.

52.     Plaintiff Gavin seeks, *inter alia*, declaratory relief, to enjoin Wrongful Eviction, specific performance of the Lease if the Lease is found valid, to recover from fraud and negligence, to redress Defendants' infringement upon Plaintiff Gavin's Constitutional rights and an accounting.

53.     Defendants fraudulently noticed, *inter alia*, three day notices of Plaintiff Gavin's Home on or about August 24, 2011 and September 19, 2011 that caused Plaintiff Gavin harm. See Exhibit A, Exh. 6 thereto; United States Constitution; California Constitution; 18 U.S.C. §§ 1341, 1343, 1346, 1961-1968; 42 U.S.C. §§ 1983, 1985; Cal. Civ. Code § 1709.[1]

54.     Defendants take Defendants' victim as Defendants find Defendants' victim.[2]   Id.

---

[1] Cal. Civ. Code "§ 1709.  Deceit; damages  Fraudulent deceit.  One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

[2] *Summers v. Tice* (1948) 33 Cal.2d 80, 84 ("Considering the last argument first, we believe it is clear that the court sufficiently found on the issue that defendants were jointly liable and that thus the negligence of both was the cause of the injury or to that legal effect."); *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398-399 ("Judges are faced with opposing responsibilities

JURISDICTION AND VENUE

55.     The Court has jurisdiction over this action because, *inter alia*, Plaintiff Gavin's claims arise under the Constitution, laws and treaties of the United States and California. Ibid.

56.     The issues in dispute arise from Defendants' wrongful conduct against Plaintiff Gavin relating to Plaintiff Gavin's Home that is situated in San Francisco County, California. Id. This Court therefore has jurisdiction to enter an order and judgment. *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57[3] (1982).

---

when continuances for the hearing of summary judgment motions are sought. On the one hand, they are mandated by the Trial Court Delay Reduction Act (Gov. Code § 68600 et seq.) to actively assume and maintain control over the pace of litigation. On the other hand, they must abide by the guiding principle of deciding cases on their merits rather than on procedural deficiencies. (*Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1085 [94 Cal.Rptr.2d 575].) Such decisions must be made in an atmosphere of substantial justice. When the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency. (Cf. *Cordova v. Vons Grocery Co.* (1987) 196 Cal.App.3d 1526, 1532-1533 [242 Cal.Rptr. 605] [when evaluating dismissal of action for delay in prosecution, policy favoring expeditious administration of justice by compelling prompt and diligent prosecution of actions subordinate to policy favoring trial on merits].) Here, there are two ways to read plaintiff's delay: either sensible case management or mere do-nothingness. As a matter of common law preference for resolution on the merits, the conflict should be resolved in plaintiff's favor."); *Vosburg v. Putney* (Wisc. 1891) 80 Wis. 523 ("Had the parties been upon the play-grounds of the school, engaged in the usual boyish sports, the defendant being free from malice, wantonness, or negligence, and intending no harm to plaintiff in what he did, we should hesitate to hold the act of the defendant unlawful, or that he could be held liable in this action. Some consideration is due to the implied license of the play-grounds. But it appears that the injury was inflicted in the school, after it had been called to order by the teacher, and after the regular exercises of the school had commenced. Under these circumstances, no implied license to do the act complained of existed, and such act was a violation of the order and decorum of the school, and necessarily unlawful. Hence we are of the opinion that, under the evidence and verdict, the action may be sustained."); בְּרֵאשִׁית בָּרָא אֱלֹהִים אֵת הַשָּׁמַיִם וְאֵת הָאָרֶץ. ("In the beginning, סיהלא created the heavens and earth."). Holy Bible, Genesis 1:1.

[3] "Basic to the constitutional structure established by the Framers was their recognition that '[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny.' The Federalist No. 47, p. 300 (H. Lodge ed. 1888) (J. Madison). To ensure against such tyranny, the Framers provided that the Federal Government would consist of three distinct Branches, each to exercise one of the governmental

57.    Plaintiff Gavin's files Plaintiff Gavin's Amended Complaint in accordance with the California Rules of Civil Procedure. The Court therefore has jurisdiction to enter an order and judgment. *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57[4] (1982).

## GENERAL ALLEGATIONS

58.    On or about March 1, 2010, the day Plaintiff Gavin moved into Plaintiff Gavin's Home, a flame from the stove owned by Defendants in the Home burst from the stove and burned Plaintiff Gavin for which Plaintiff Gavin remains under doctor's care ("Stove Injury").

59.    No one in Plaintiff Gavin's family has violated any of the rules during the Lease indicated in Ch. 15: Termination of Assistance and HAP Contracts ("Rules") that would justify eviction for violating those Rules. See Exhibit A, Exhibit 8 thereto.

60.    Defendants however violated the Public Housing Administration ("PHA") rule, "The owner must give PHA a copy of the eviction notice to the tenant." ("Rule") by failing to provide the copy.

61.    Defendants had accepted HUD's money for Plaintiff Gavin's rent as of June 2012.

---

powers recognized by the Framers as inherently distinct." *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57 (1982).
[4] "Basic to the constitutional structure established by the Framers was their recognition that '[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny.' The Federalist No. 47, p. 300 (H. Lodge ed. 1888) (J. Madison). To ensure against such tyranny, the Framers provided that the Federal Government would consist of three distinct Branches, each to exercise one of the governmental powers recognized by the Framers as inherently distinct." *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57 (1982).

62.     Plaintiff Gavin's medical condition compelled Plaintiff Gavin to request from Defendants during the term of the Lease the designation of a parking space near Plaintiff Gavin's Home to provide Plaintiff Gavin meaningful access to Plaintiff Gavin's Home and to accommodate Plaintiff Gavin's handicaps that Defendants refused to designate ("Parking Space Request").

63.     On August 18, 2011, Kathleen McEvoy at the SF MTA wrote a letter dated August 18, 2011 to Plaintiff Gavin responding to Plaintiff Gavin's request to establish a blue zone near Plaintiff Gavin's Home ("August 18, 2011 SF MTA Letter").  See Exhibit A, Exhibit 6, August 18, 2011 SF MTA Letter, attached thereto ("Exhibit 6").

64.     On August 23, 2011, a first hearing ("August 23, 2011 Hearing") in the Sunshine case 11048 occurred against the Board of Supervisors.

65.     Bert D. Polacci, Pacifica, CA a.k.a. Bernard D. Polacci ("Mr. Polacci"), a management employee with Defendants was present at the Hearing and several witnesses saw Mr. Polacci.

66.     The City and County of San Francsico Sunshine Ordinance Task Force ("Sunshine Task Force") issued a decision at the Hearing stating Plaintiff Gavin satisfied the local remedy that permitted Plaintiff Gavin to file a claim in court regarding the violations Plaintiff Gavin found ("Decision").

67.     Mr. Polacci then left the August 23, 2011 Hearing in a hurry.

68.     On August 24, 2011, Plaintiff Gavin received from Defendants a, in Plaintiff Gavin's opinion, fraudulently issued unsigned three day notice to perform covenant or quit dated August 24, 2011 that claims Plaintiff Gavin owes Defendants $1,586,72 in billed utility charges ("August 24, 2011 Notice").

69.    Plaintiff Gavin asserts on information and belief that Defendants issued and posted the August 24, 2011 Notice in retaliation since Plaintiff Gavin had been residing at Plaintiff Gavin's Home for 17 months and is a disabled person who asserts her rights.

70.    Plaintiff Gavin asserts on information and belief that Defendants targeted Plaintiff Gavin for retaliation by issuing and posting the August 24, 2011 Notice.

71.    On September 1, 2011, Plaintiff Gavin paid rent for her Home with an installment of $50 that Defendants accepted ("September 1, 2011 Rent Payment").

72.    The September 1, 2011 Rent Payment in Plaintiff Gavin's rent account ledger.

73.    On September 3, 2011, Plaintiff Gavin received an Order of Determination from the Sunshine Task Force for hearing part 1 of 2 regarding Supervisor Eric Mar.

74.    On September 19, 2011, Plaintiff Gavin received from Defendants, in Plaintiff Gavin's opinion, a fraudulently issued three day notice to perform covenant or quit dated September 19, 2011 signed by David P. Wasserman, Esq. ("Mr. Wasserman"), alleged attorney and agent for the landlord Defendants claiming a lesser amount of billed utility charges in the amount of $1121.92 ("September 19, 2011 Notice").  See Exhibit 6.

75.    On September 21, 2011, Defendants generated an AUM Statement relating to Plaintiff Gavin's Home indicating an AUM Admin Charge of $2.75 ("September 21, 2011 AUM Admin Charge").  See Exhibit N, September 21, 2011 AUM Admin Charge, attached hereto.

76.    On September 27, 2011, Sunshine hearing case 11048 part 2 of 2 occurred regarding Supervisors David Chiu, Malia Cohen and Scott Wiener.

77.    On October 3, 2011, Plaintiff Gavin paid rent for her Home with an installment payment of $50.  See Exhibit 6, page 4; and Exhibit G, October 3, 2011 letter from Plaintiff Gavin to Mr. Wasserman re: Utility Account # 1019802352, attached hereto.

78.     On October 17, 2011, the SF Examiner printed an article about the large number of three day notices issued at Parkmerced where Plaintiff Gavin's Home is located.  See Exhibit A, Exhibit 4 thereto, SF Examiner October 17, 2011 article.

79.     On October 19, 2011, Defendants returned Plaintiff Gavin's $50 rent payment ("Returned Payment").  See Exhibit 6, pp. 4-5; and Exhibit H, October 6, 2011 letter from Defendants to Plaintiff Gavin regarding inability to accept checks due to Plaintiff Gavin's "current legal status."

80.     Plaintiff Gavin thereafter requested that Defendants use the Returned Payment to pay utility fees as an installment payment that Defendants denied.  See Exhibit 6, pp. 4-5.

81.     On November 1, 2011, Plaintiff Gavin received an Order of Determination from the Sunshine Task Force for the hearing part 2 of 2.  See Exhibit A, Exhibit 3 thereto, Sunshine Task Force Order of Determination for hearing part 2 of 2.

82.     On December 6, 2011, Defendants in the course of performing a second inspection in Plaintiff Gavin's Home that is done annually told the San Francisco Housing Authority ("SFHA") inspector that Defendants would not pay for grab bars on Plaintiff Gavin's bathtub or shower; this information is in Plaintiff Gavin's file with SFHA.

83.     On January 27, 2012, the U.S. Department of Housing and Urban Development ("HUD") wrote a letter dated January 27, 2012 stating Defendants use "a R.U.B.S. system to charge their tenants for water and garbage" and, "At one time there were multiple evictions pending at Parkmerced for non-payment of utilities, but those cases have been resolved by Parkmerced." ("January 27, 2012 HUD Letter").  See Exhibit P, January 27, 2012 HUD Letter, attached hereto.

84.     On April 17, 2012, the Sunshine Task Force published an Order of Determination in Anonymous v. John Rahaim, et al., Planning (Case No. 11068) ("April 17, 2012 Sunshine Order").  See Exhibit I, April 17, 2012 Sunshine Order, attached hereto.

85.     On April 17, 2012, Plaintiff Gavin filled out Sunshine Ordinance Complaints to the attention of the Sunshine Task Force listing contacts at the Department or Commission as Matt Lasky, Jessica Manzi, SF MTA Board of Directors and Michael Yarne regarding violations that allegedly occurred at a March 28, 2011 public meeting ("April 17, 2012 Sunshine Complaints").  See Exhibit E, April 17, 2012 Sunshine Complaints, attached hereto.

86.     On April 18, 2012, Plaintiff Gavin filled out a Sunshine Ordinance Complaint to the attention of the Sunshine Task Force against the San Francisco City Attorney listing the contact at the Department or Commission as Dennis Herrera regarding violations that allegedly occurred at a May 24, 2011 public meeting ("April 18, 2012 Sunshine Complaint").  See Exhibit F, April 18, 2012 Sunshine Complaint, attached hereto.

87.     On May 11, 2012, Defendants is served with a complaint for the Stove Injury. See Exhibit Q, May 14, 2011 e-mail regarding personal service on Defendants of Summons and Complaint completed on May 11, 2012 at 2:15 p.m., attached hereto.

88.     On May 15, 2012, Plaintiff Gavin faxed a letter to HUD Secretary Donovan.

89.     On May 18, 2012, the Sunshine Ordinance Task Force published a Notice of Finding of Violation if Sunshine Ordinance Section 67.21(e) for Failure to Appear at Hearing re Sunshine Complaints by San Francsico Deputy City Attorneys Charles Russell Sullivan, Glen Ellen, CA, and Cheryl Susana Adams, San Francisco, CA a.k.a. Cheryl S. Edmonds a.k.a. Cheryl S. McNichols addressed to San Francisco City Attorney Dennis Jose Herrera, San Francisco, CA

("May 18, 2012 Sunshine Letter").  See Exhibit J, May 18, 2012 Sunshine Letter, attached

hereto.

90.    On May 22, 2012, Plaintiff Gavin received a letter from HUD Regional

Administrator that referenced a letter Plaintiff Gavin faxed to HUD Secretary Donovan on May

15, 2012; Plaintiff Gavin contacted HUD and learned the complaint is assigned to Ms. Farsai for

an investigation.  See Exhibit A, Exhibit 2, May 22, 2012 HUD Regional Administrator letter.

91.    On or about May 23, 2012, Plaintiff Gavin obtained from Stellar Management a

Resident Ledger dated May 23, 2012 for Plaintiff Gavin's Home ("May 23, 2012 Resident

Ledger").  See Exhibit O, May 23, 2012 Resident Ledger, attached hereto.

92.    On July 2, 2012, Plaintiff Gavin's counsel could not represent Plaintiff Gavin at

trial in Plaintiff Gavin's San Francisco Superior Court ("SFSC") unlawful detainer case ("Case")

due to a conflict of interest so Plaintiff Gavin, unfamiliar with the rules of court, attended court

arbitration at SFSC on July 2, 2012 without counsel ("Arbitration").

93.    The Arbitration lasted two hours.

94.    The arbitrator at Arbitration told Plaintiff Gavin that the Case would be heard the

next day on July 3, 2012.

95.    No one ever told Plaintiff Gavin that the Case would proceed to trial later the

morning of July 2, 2012.

96.    Plaintiff Gavin experienced heart palpitations and continues to have them due to

extreme stress of the Arbitration Case and wrongful eviction from her home.

97.    On July 2, 2012, the SFSC entered a default judgment in Plaintiff Gavin's Case.

98.    On July 4, 2012, the SFSC was closed due to the holiday.

99.     On July 5, 2012, the SFSC's Access self-help center ("Access") provided Plaintiff Gavin with paperwork for an ex parte application and motion to vacate judgment and to return to Access if Plaintiff Gavin had any questions.

100.    On July 6, 2012, SFSC's Access was closed and Plaintiff Gavin did not know where to go to obtain any assistance.

101.    On July 9, 2012, Plaintiff Gavin attempted to submit at SFSC an ex parte application but the SFSC clerk instructed Plaintiff Gavin that the documents were incorrect.

102.    On July 10, 2012, Plaintiff Gavin filed at SFSC an ex parte application to be heard on Thursday, July 12, 2012.

103.    On July 10, 2012, Plaintiff Gavin received verification from the San Francisco Human Rights Commission ("SFHRC") that Plaintiff Gavin has an open complaint against Defendants.  See Exhibit A, Exhibit 1 thereto, July 10, 2012 letter from SFHRC to Plaintiff Gavin.

104.    On or about July 11, 2012, Plaintiff Gavin received a letter dated July 11, 2012 from the Volunteer Legal Services Program ("VLSP") regarding an opinion that Defendants, among other things, overcharged Plaintiff Gavin on Plaintiff Gavin's utility bills by calculating Plaintiff Gavin's utility bills incorrectly ("July 11, 2012 VLSP Letter").  See Exhibit K, July 11, 2012 VLSP Letter, attached hereto.

105.    On July 12, 2012, a neighbor drove Plaintiff Gavin to SFSC but the stress of everything caused Plaintiff Gavin to leave the court papers at home and SFSC Hon. Ronald E. Quidachay, Sacramento, CA ("Judge Quidachay") told Plaintiff Gavin to return the next day, Friday, July 13, 2012.

106.     On July 13, 2012, Plaintiff Gavin asked at SFSC for a clerk supervisor and Ms. Gonzalez approached Plaintiff Gavin at the SFSC window; Plaintiff Gavin was running late and asked Ms. Gonzalez for "reasonable accommodation" and assistance; Ms. Gonzalez stated to Plaintiff Gavin that the proper request had to be a 5 day notice in advance; Plaintiff Gavin explained to Ms. Gonzalez that Plaintiff Gavin was trying to get to SFSC Department 501; Ms. Gonzalez then called SFSC Department 501; Plaintiff Gavin went to SFSC Department 501 on the fifth floor of SFSC but Judge Quidachay told Plaintiff Gavin to get out of SFSC Department 501 and return the following Monday, July 16, 2012; Plaintiff Gavin went back downstairs and requested to speak with Ms. Gonzalez's supervisor and then Ms. Davis approached Plaintiff Hambolu; Plaintiff Gavin explained to Ms. Davis what transpired and Ms. Davis called SFSC Department 501; Ms. Davis stated to Plaintiff Gavin that SFSC Department 501 had finished with the ex parte orders for the day; at that time, the hour was already noon and Plaintiff Gavin did not have enough time to give a 25 hour notice for an ex parte application to be heard on Monday, July 16, 2012 ("Wrongful Delay").

107.     On July 16, 2012, SFSC clerks were on strike so Plaintiff Gavin left Plaintiff Gavin's ex parte application in the box in SFSC available for claims.

108.     On July 17, 2012, Judge Quidachay stated to Plaintiff Gavin that Judge Quidachay would not set aside the default judgment in Plaintiff Gavin's Case nor would he grant a new trial but that he would only give Plaintiff Gavin one stay that would expire on July 25, 2012 ("Wrongful Ruling").

109.     Judge Quidachay's Wrongful Ruling violates Plaintiff Gavin's right to a jury trial. Pernell v. Southall Realty, 416 U.S. 363, 383 (1978).

110.   On July 18, 2012, Plaintiff Gavin wrote a letter to Brandon Riley, ADA coordinator of the SFSC explaining what happened on July 13, 2012 regarding receiving no assistance for "reasonable accommodation" at the SFSC that Plaintiff Gavin requested ("July 18, 2012 SFSC Letter").

111.   On July 19, 2012, Plaintiff Gavin visited federal court to inquire about filing a claim.

112.   On July 23, 2012, Plaintiff Gavin filed the Complaint against Defendants, and Does.  See Exhibit A.

113.   On July 25, 2012, the San Francisco Sheriff wrongfully evicted Plaintiff Gavin from Plaintiff Gavin's Home.

114.   On July 25, 2012, Plaintiff Gavin collapsed twice, was hospitalized and required heart monitoring.

115.   Subsequent to the Wrongful Eviction, Defendants removed from Plaintiff Gavin's Home Plaintiff Gavin's Property based on Plaintiff Gavin's information and belief.

116.   Defendants did not provide Plaintiff Gavin with any message or to Plaintiff Gavin's e-mail that Plaintiff Gavin provided in the Lease regarding taking possession of Plaintiff Gavin's Property.  See Exhibit B, page 19.

1187.   On July 26, 2012, Plaintiff Gavin e-mailed after a phone conversation Mr. Seth J. Mallen, Napa, CA ("Mr. Mallen") to request reasonable accommodation to get Plaintiff Gavin's things from Plaintiff Gavin's Home to which Mr. Mallen directed Plaintiff Gavin to Defendants' agent and attorney Mr. Wasserman ("July 26, 2012 E-mail").  See Exhibit M, July 26, 2012 E-mail, attached hereto.

119.   Plaintiff Gavin is legally entitled to impartial[5] treatment from every source free from discrimination due to Plaintiff Gavin's handicaps or any other reason according to the law that has not occurred according to the facts of this case.

120.   From March 1, 2011 to the present and continuing, Defendants fraudulently discriminated against Plaintiff Gavin based on her handicaps ("Wrongful Discrimination"); the Wrongful Three Day Notices; the Wrongful Eviction; and the seizure of Plaintiff Gavin's Property ("Wrongful Seizure").  See Exhibits A-Q; Cal. Civ. Code §§ 1709, 2223,[6] 2224[7]; PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP (2007) 150 Cal.App. 4th 384, 398[8]; Campbell v. Superior Court (2005) 132 Cal.App.4th 904, 920.[9]

121.   Due to the Wrongful Seizure, Defendants fraudulently continue to detain wrongfully Plaintiff Gavin's Property ("Wrongful Detention"). Cal. Civ. Code §§ 1709, 2224;

---

[5] Black's Law Dictionary defines impartial as "adj. (16c) Unbiased; disinterested."  Black's Law Dictionary (2009) 9th edition, Bryan A. Garner editor-in-chief.  "These things also belong to the wise: it is not good to show partiality in judgment." Proverb 24:23.

[6] Cal. Civ. Code "§ 2223.  Involuntary trustee  One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner."

[7] Cal. Civ. Code "§ 2224.  Wrongful act  One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

[8] "Before a constructive trust can be imposed, the plaintiff must prove that the defendant's acquisition of the property was wrongful.  (Ibid. [' ' a constructive trust may only be imposed where the following three conditions are satisfied: (1) the existence of a res (property or some interest in property); (2) the right of a complaining party to the res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to it' '], quoting Communist Party v. 522 Valencia, Inc., supra, 35 Cal.App.4th at p. 990].)"  PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP (2007) 150 Cal.App. 4th 384, 398.

[9] " 'A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner. [Citations.]  The essence of the theory of constructive trust is to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing. [Citation.]" Campbell v. Superior Court (2005) 132 Cal.App.4th 904, 920.

Warren v. Merrill (2006) 143 Cal.App.4th 96, 112-113[10]; Roberts v. Salot (1958) 166 Cal.App.2d

294, 299[11]; Padilla v. Yoo, D.J.D.A.R. 5724, 5731[12] (9th Cir. 2012); In re Tobacco II Cases

---

[10] "What Merrill's arguments overlook are the following principles of law: Once fraud by a fiduciary is shown by the evidence (1) a written contract for a real property transaction is not required; (2) the absence of a written contract does not violate the statute of frauds; (3) the defrauded person may be found to hold superior title to that held by the defrauder; and (4) a wide variety of equitable remedies are available and appropriate to remedy the fiduciary's fraud. Many of these principles were explained by the Supreme Court in *Mazzera v. Wolf*.[15] 'A constructive trust may be imposed when a party has acquired property to which he is not justly entitled, if it was obtained by actual fraud, mistake or the like, or by constructive fraud through violation of some fiduciary or confidential relationship. [Citations.] Such a trust, imposed upon a partner, agent, or other fiduciary, arises by operation of law, and, accordingly, the statute of frauds is no bar. [Citations.] But the mere failure to perform an oral promise to convey real property is not itself fraud, and the agreement will be held unenforceable under the statute of frauds in the absence of actual or constructive fraud. [Citations.]'[16]." Warren v. Merrill (2006) 143 Cal.App.4th 96, 112-113.

[11] "Having breached the promise which formed the only consideration for assignment of the second trust deed to him, and having paid no money for it, defendant had only nominal title thereto. However, he represented to Title Insurance and Trust Company that he was the owner of that second lien and entitled to receive the surplus. . . . Clearly a constructive trust arose in favor of plaintiff pursuant to section 2224, Civil Code, . . . ." Roberts v. Salot (1958) 166 Cal.App.2d 294, 299.

[12] "The absence of a decision defining the constitutional and statutory rights of citizens detained as enemy combatants need not be fatal to the plaintiffs' claims. The Supreme Court has long held that 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.' Hope v. Pelzer, 536 U.S. 730, 741 (2002); see also United States v. Lanier, 520 U.S. 259, 271 (1997) ("There has never been . . . a section 1983 case accusing welfare officials of selling foster children into slavery; but it does not follow that if such a case arose, the officials would be immune from damages [or criminal] liability.' (alteration in original) (quoting United Staes v. Lanier, 73 F.3d 1380, 1410 (6th Cir. 1996) (Daughtrey, J., dissenting)) (internal quotation marks omitted). The plaintiffs invoke this principle here. They argue that, even if there is no specific judicial decision holding that the Fifth Amendment's prohibition on government conduct that 'shocks the conscience' is violated when the government tortures a United States citizen designated as an enemy combatant, torture of a United States citizen is the kind of egregious constitutional violation for which a decision 'directly on point' s not required. Al-Kidd, 131 S.Ct. at 2083.[9] We agree with the plaintiffs that the unconstitutionality of torturing a United States citizen was 'beyond debate' by 2001. Id.[10] Yoo is entitled to qualified immunity, however, because it was not clearly established in 2001-03 that the treatment to which Padilla says he was subjected amounted to torture." Padilla v. Yoo, D.J.D.A.R. 5724, 573 (9th Cir. 2012); Black's Law dictionary defines torture as, "n. (16c) The infliction of intense pain to the body or mind to punish, to extract a confession or information, or to obtain sadistic pleasure." Black's Law Dictionary (2009) 9th ed., Bryan A. Garner editor-in-chief.

(2009) 46 Cal.4th 298, 312[13]; In re Guantanamo Bay Detainee Litigation, 581 F.Supp.2d 33, 42[14]

(D.D.C. 2008); In re Xe Services Alien Tort Litigation, 665 F.Supp.2d 569, 589[15] (E.D.Va.

2009); In re Asbestos Litigation, 134 F.3d 668, 680[16] (5th Cir. 1998); In re Agent Orange

Product Liability Litigation, 996 F.2d 1425, 1432[17] (2nd Cir. 1993).

---

[13] "The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud. 'A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief' under the UCL. (Day v. A T & T Corp. (1998) 63 Cal.App.4th 325, 332 [74 Cal.Rptr.2d 55]; see State Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1105 [53 Cal.Rptr.2d 229].) This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices. (Fletcher v. Security Pacific National Bank (1979) 23 Cal.3d 442, 453 [153 Cal.Rptr. 28, 591 P.2d 51].)" In re Tobacco II Cases (2009) 46 Cal.4th 298, 312.

[14] "These qualifications are important—indeed essential—to preserving habeas corpus, 'an indispensable mechanism for monitoring the separation of powers.' Boumediene, 128 S.Ct. at 2259. The judicial authority to issue a writ of habeas corpus is derived from the guiding principle that 'personal liberty [] is secured by adherence to separation of powers.'[5] Id. at 2277. And the court's authority to safeguard an individual's liberty from unbridled executive fiat reaches its zenith when the Executive brings an individual involuntarily within the court's jurisdiction, detains that individual and then subverts diplomatic efforts to secure alternative channels for release. See St. Cyr, 533 U.S. at 301, 121 S.Ct. 2271 (stating that the protections afforded by habeas review are at their strongest in reviewing the legality of executive detention). Liberty finds its liberator in the great writ, and the great writ, in turn finds protection under the Constitution. Wingo v. Wedding, 418 U.S. 461, 468, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974) (recognizing that 'the great constitutional privilege' of habeas corpus has historically provided a promptand efficacious remedy for whatever society deems to be intolerable restraints' (internal citation omitted))." In re Guantanamo Bay Detainee Litigation, 581 F.Supp.2d 33, 42 (D.D.C. 2008).

[15] "The Supreme Court recently declared that threshold dismissal for failure to state a valid claim must be granted unless the complaint 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))." In re Xe Services Alien Tort Litigation, 665 F.Supp.2d 569, 589.

[16] "The Amchem class was rejected also, in part, because common questions of law or fact did not predominate over questions affecting only individual class members. See id. at —, 117 S/ Ct. at 2249 (citing rule 23(b)(3)." In re Asbestos Litigation, 134 F.3d 667, 680 (5th Cir. 1998).

[17] "Appellants contend that Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, particularly Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), require that the district court abstain from exercising jurisdiction in deference

122.   Defendants and SFSC fraudulently denied and continue to deny Plaintiff Gavin honest services that Plantiff Gavin had and continues to have an expectation of receiving from Defendants and the SFSC but instead received and continues to receive from Defendants and the SFSC dishonest services including the Wrongful Discrimination, Wrongful Three Day Notices, Wrongful Delay, Wrongful Ruling, Wrongful Eviction, Wrongful Seizure and Wrongful Detention ("Wrongful Conduct").   United States Constitution; California Constitution; Cal. Civ. Code § 1709; The MEGA Life & Health Ins. Co. v. Superior Court (2009) 172 Cal.App.4[th] 1522, 1530; 18 U.S.C. §§ 1341, 1343, 1346; United States v. Milanovic, D.J.D.A.R. 5162, 5164[18] (9th Cir. 2012); Skilling v. United States, 561 U.S. ____[19] (2010); U.S. v. Williams, 441 F.3d 716, 720, 721-722, 723, 724[20] (2006).

---

to the Texas state courts. This argument stands the Younger doctrine on its head.  Younger teaches us to recognize the interest of the states in protecting the authority of their judicial system so that their orders and judgments are not rendered nugatory.  Pennzoil, supra, 481 U.S. at 14 n. 12, 107 S.Ct. at 1527 n. 12 (quoting Juidice v. Vail, 430 U.S. 327, 336 n. 12, 97 S.Ct. 1211, 1218 n. 12, 51 L.Ed.2d 376 (1977)).  The application of Younger, as advocated by appellants, would threaten the authority of the federal judicial system and potentially nullify the federal courts' orders and judgments.  This result is not the sort of federal-state comity envisioned in Younger and Pennzoil.  See Town of Lockport v. Citizens for Community Action at the Local Level, Inc., 430 U.S. 259, 264 n. 8, 97 S.Ct. 1047, 1051 n. 8, 51 L.Ed.2d 313 (1977)."  In re Agent Orange Product Liability Litigation, 996 F.2d 1425, 1432 (2nd Cir. 1993).

[18] "We believe that breach of fiduciary duty is required for honest services fraud, that it does not require a formal fiduciary duty, and that a trust relationship, as existed here, is sufficient." United States v. Milanovic, D.J.D.A.R. 5162, 5164.

[19] "Arguing against any limiting construction, Skilling contends that it is impossible to identify a salvageable honest-services core; 'the pre-McNally caselaw,' he asserts, "is a hodgepodge of oft-conflicting holdings' that are 'hopelessly unclear.'  Brief for Petitioner 39 (some capitalization and italics omitted).  We have rejected an argument of the same tenor before."  Skilling v. United States, 561 U.S. ____; Civil Service Comm'n v. Letter Carriers, 413 U.S. 548 (1973).

[20] "Section 1346 thus codifies an 'intangible rights' theory of fraud.  Under this theory, the object of the fraudulent scheme is the victim's intangible right to receive honest services. . . . Defendant argues that § 1346 is exclusively a 'public corruption' statute that cannot be used to prosecute private individuals for acts of fraud.  We disagree. . . . We follow our sister circuits and hold that the 'intangible rights' theory of fraud, as codified by § 1346, can apply to private individuals as well as to public figures. . . . Because Defendant was a fiduciary, we have no occasion to decide whether the 'intangible right of honest services' in § 1346 applies to persons who are not fiduciaries."  U.S. v. Williams, 441 F.3d 716, 720, 721-722, 723, 724 (2006) (citing to Yates v. United States, 354 U.S. 298, 312 (1951); Burks v. Untied States, 437 U.S. 1 (1978), Griffin v. United States, 502 U.S. 46, 55 (1991); United States v. Fulbright, 105 F.3d 443, 451

123.    Defendants operate as an ongoing enterprise through a pattern of racketeering conduct involving the mail and wire as set forth above including Wrongful Conduct and have deprived and continue to deprive Plaintiff Gavin of, *inter alia*, Plaintiff Gavin's Constitutional rights to due process, equal protection, to be free from illegal takings and to separation of powers; and the ability to enjoy quietly Plaintiff Gavin's life free from discrimination due to Plaintiff Gavin's handicaps or any other reason in violation of Cal. Pen. Code § 496 and 18 U.S.C. § 1961(1)(B) (section 1341 relating to mail fraud and section 1343 relating to wire fraud) warranting an award of treble and punitive damages according to proof.  See Exhibits A-Q; United States Constitution; California Constitution; Cal. Pen. Code § 496; Cal. Civ. Code § 1709; 18 U.S.C. §§ 1341, 1343, 1346, 1961-1968; 42 U.S.C. §§ 1983, 1985; Citizens of Humanity, LLC v. Costco Wholesale Corp. (2009) 171 Cal.App.4[th] 1, 16-17[21]; Bridge v. Phoenix

---

(9th Cir. 1997); *United States v. Frega*, 179 F.3d 793, 802 n. 6 (9th Cir. 1999); *United States v. Bohonus*, 628 F.2d 1169, 1171 (9th Cir. 1980); *McNally v. United States*, 493 U.S. 350, 356 (1987); *United States v. Louderman*, 576 F.2d 1383, 1387 (9th Cir. 1978); *United States v. Rybicki*, 354 F.3d 124, 127 (2d Cir. 2003) (en banc); *United States v. Frost*, 125 F.3d 346, 266 (6th Cir. 1997); *United States v. Vinyard*, 266 F.3d 320, 326 (4th Cir. 2001); *United States v. deVegter*, 198 F.3d 1324, 1330 (11th Cir. 1999); *United States v. Sun-Diamond Growers of Cal.*, 138 F.3d 961, 973 ((D.C. Cir. 1998)).

[21] "We first consider the cause of action for sale of stolen property.  Penal Code Section 496, subdivision (a) provides criminal penalties for every person who sells property knowing it to be stolen.  Subdivision (c) of that statute provides that '[a]ny person who has been injured by a violation of subdivision (a) . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees.'  The trial court concluded that Citizens had failed to state a cause of action for violation of Penal Code section 496 because Citizens had not alleged that it had been the owner of the property when it was stolen.  Costco does not attempt to pursue this line of argument on appeal.  The trial court was incorrect.  Penal Code section 496, subdivision (c) provides a private right of action for '[a]ny person who has been injured' by the sale of stolen property.  The plain language of the statute clearly does not restrict the right to bring a civil action to the owner of the stolen property.'"  Citizens of Humanity, LLC v. Costco Wholesale Corp. (2009) 171 Cal.App.4[th] 1, 16-17.

Bond & Indemnity Co., 553 U.S. ____ [22] (2008) Izenberg v. ETS Services, LLC, 589 F.Supp.2d

1193, 1201-1205 (C.D.Cal. 2008); Odom v. Microsoft Corp., 486 F.3d 541, 547[23] (9th Cir. 2007);

Forsyth v. Humana, 114 F.3d 1467, 1481 (9th Cir. 1997); Bonner v. Lewis, 857 F.2d 559, 562-

563 (9th Cir. 1988); Nodleman v. Aero Mexico, 528 F.Supp. 475, 488-494 (C.D.Cal. 1981);

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481 (1985); United States v. Turkette, 452 U.S.

576, 582 (1981); Mitchum v. Foster, 407 U.S. 225, 242-243 (1972).

FIRST CAUSE OF ACTION
(Declaratory Relief)

124.   Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

125.   On or about March 1, 2010, Plaintiff Gavin suffered the Stove Injury.

126.   No one in Plaintiff Gavin's family has violated the Rules.

127.   Defendants violated the PHA Rule.

128.   Defendants had accepted HUD's money for Plaintiff Gavin's rent as of June

2012.

129.   Plaintiff Gavin's medical condition compelled Plaintiff Gavin to make the

Parking Space Request to Defendants that Defendants denied.

130.   On August 18, 2011, Kathleen McEvoy at the SF MTA wrote the August 18,

2011 SF MTA Letter.

---

[22] "The Racketeer Influenced and Corrupt Organizations Act (RICO or Act), 18 U.S.C. §§ 1961-1968, provides a private right of action for treble damages to '[a]ny person injured in his business or property by reason of a violation' of the Act's criminal prohibitions.  § 1964(c)." *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. ____ (2008).
[23] "We take from these cases the general instruction that we should not read the statutory terms of RICO narrowly.  Rather, as the Court wrote in *Sedima*, 'RICO is to be read broadly.'  473 U.S. at 497, 105 S.Ct. 3275.  As Congress admonished and as the Court repeated in *Sedima*, RICO should be liberally construed to effectuate its remedial purpose.' *Id.* At 408, 105 S.Ct. 3275; RICO § 904(a)."  *Odom v. Microsoft*, 486 F.3d 541, 547 (9th Cir. 2007).

131. On August 23, 2011, Plaintiff Gavin and Mr. Polacci attended the August 23, 2011 Hearing where the Sunshine Task Force issued the Decision and Mr. Polacci left in a hurry.

132. On August 24, 2011, Plaintiff Gavin received the August 24, 2011 Notice that Plaintiff Gavin asserts Defendants issued in retaliation for, among other reasons, the August 23, 2011 Hearing.

133. Plaintiff Gavin asserts that thereafter Defendants targeted Plaintiff Gavin for retaliation.

134. On September 1, 2011, Plaintiff Gavin paid the September 1, 2011 Rent Payment.

135. On September 19, 2011, Plaintiff Gavin received the September 19, 2011 Notice.

136. On September 21, 2011, Defendants generated the September 21, 2011 AUM Admin Charge.

137. On October 3, 2011, Plaintiff Gavin paid rent for her Home with an installment payment of $50.

138. On October 19, 2011, Defendants returned the Returned Payment citing Plaintiff Gavin's "current legal status."

139. Plaintiff Gavin thereafter requested that Defendants use the Returned Payment to pay utility fees as an installment payment that Defendants denied.

140. On December 6, 2011, Defendants in the course of performing a second inspection that is done annually told the SFHA inspector that Defendants would not pay for grab bars on Plaintiff Gavin's bathtub or shower.

141. On January 27, 2012, HUD wrote the January 27, 2012 HUD Letter.

142. On May 14, 2012, Defendants is served with a complaint for the Stove Injury.

143. On May 15, 2012, Plaintiff Gavin faxed a letter to HUD Secretary Donovan.

144.    On May 22, 2012, Plaintiff Gavin received the May 22, 2012 HUD Regional Administrator letter.

145.    On or about May 23, 2012, Plaintiff Gavin obtained the May 23, 2012 Resident Ledger.

146.    On July 2, 2012, Plaintiff Gavin's counsel could not represent Plaintiff Gavin at trial in Plaintiff Gavin's Case so Plaintiff Gavin, unfamiliar with the rules of court, attended the Arbitration without counsel.

147.    The Arbitration lasted two hours.

148.    The arbitrator at Arbitration told Plaintiff Gavin that the Case would be heard the next day on July 3, 2012.

149.    No one ever told Plaintiff Gavin that the Case would proceed to trial later the morning of July 2, 2012.

150.    Plaintiff Gavin experienced heart palpitations due to extreme stress of the Arbitration and Case.

151.    On July 2, 2012, the SFSC entered a default judgment in Plaintiff Gavin's Case.

152.    On July 4, 2012, the SFSC was closed due to the holiday.

153.    On July 5, 2012, Access provided Plaintiff Gavin with paperwork for an ex parte application and motion to vacate judgment and to return to Access if Plaintiff Gavin had any questions.

154.    On July 6, 2012, Access was closed and Plaintiff Gavin did not know where to go to obtain any assistance.

155.    On July 9, 2012, Plaintiff Gavin attempted to submit at SFSC an ex parte application but the SFSC clerk instructed Plaintiff Gavin that the documents were incorrect.

156.    On July 10, 2012, Plaintiff Gavin filed at SFSC an ex parte application to be heard on Thursday, July 12, 2012.

157.    On July 10, 2012, Plaintiff Gavin received verification from SFHRC that Plaintiff Gavin has an open complaint against Defendants.

158.    On or about July 11, 2012, Plaintiff Gavin received the July 11, 2012 VLSP Letter

159.    On July 12, 2012, a neighbor drove Plaintiff Gavin to SFSC and Judge Quidachay told Plaintiff Gavin to return the next day, Friday, July 13, 2012.

160.    On July 13, 2012, Plaintiff Gavin endured the Wrongful Delay.

161.    On July 16, 2012, SFSC clerks were on strike so Plaintiff Gavin left Plaintiff Gavin's ex parte application in the box in SFSC available for claims.

162.    On July 17, 2012, Judge Quidachay stated to Plaintiff Gavin the Wrongful Ruling that violated Plaintiff Gavin's right to a jury trial.

163.    On July 18, 2012, Plaintiff Gavin wrote the July 18, 2012 SFSC Letter.

164.    On July 19, 2012, Plaintiff Gavin visited federal court to inquire about filing a claim.

165.    On July 25, 2012, the San Francisco Sheriff evicted Plaintiff Gavin from Plaintiff Gavin's Home.

168.    On July 25, 2012, Plaintiff Gavin collapsed twice, was hospitalized and required heart monitoring. On October 28-30, 2012 Plaintiff Gavin was hospitalized for same reason.

169.    Defendants recently removed from Plaintiff Gavin's Home Plaintiff Hambolu's Property.

170.   Defendants did not provide Plaintiff Gavin with any message regarding taking possession of Plaintiff Gavin's Property.

171.   On July 26, 2012, Plaintiff Gavin e-mailed after a phone conversation Mr. Mallen the July 26, 2012 E-mail.

172.   The amounts and information Defendants claim in the Wrongful Three Day Notices are inconsistent.  See Exhibit 6.

173.   Plaintiff Gavin has therefore not breached the Lease according to the Wrongful Three Day Notices.

174.   Defendants refused and continue to refuse to accept a partial payment.  See Complaint and Verified Complaint.

175.   An actual controversy therefore exists by Defendants' own behavior.

176.   Defendants refuse to account for the exact amount Plaintiff Gavin allegedly owes Defendants or for the exact amount Defendants owe Plaintiff Gavin, if any.

177.   Defendants have fraudulently gained from Plaintiff Gavin's money and property by Defendants' Wrongful Conduct.

178.   Defendants have fraudulently seized property from Plaintiff Gavin by Defendants' Wrongful Conduct.

179.   Plaintiff Gavin seeks a judicial determination and declaration of Plaintiff Gavin and Defendants' respective rights and duties that is appropriate at this time to prevent any further harm to Plaintiff Gavin.  See Exhibits A-Q.

180.   The law guarantees Plaintiff Gavin the right of a full and fair hearing concerning any harm Defendants may have caused Plaintiff Gavin.  See Exhibits A-Q.

181.   Plaintiff Gavin has incurred fees and other court costs according to proof.

## SECOND CAUSE OF ACTION
### (Injunctive Relief)

182.    Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

183.    On or about March 1, 2010, Plaintiff Gavin suffered the Stove Injury.

184.    No one in Plaintiff Gavin's family has violated the Rules.

185.    Defendants violated the PHA Rule.

186.    Defendants had accepted HUD's money for Plaintiff Gavin's rent as of June 2012.

187.    Plaintiff Gavin's medical condition compelled Plaintiff Gavin to make the Parking Space Request to Defendants that Defendants denied.

188.    On August 18, 2011, Kathleen McEvoy at the SF MTA wrote the August 18, 2011 SF MTA Letter.

189.    On August 23, 2011, Plaintiff Gavin and Mr. Polacci attended the August 23, 2011 Hearing where the Sunshine Task Force issued the Decision and Mr. Polacci left in a hurry.

190.    On August 24, 2011, Plaintiff Gavin received the August 24, 2011 Notice that Plaintiff Gavin asserts Defendants issued in retaliation for, among other reasons, the August 23, 2011 Hearing.

191.    Plaintiff Gavin asserts that thereafter Defendants targeted Plaintiff Gavin for retaliation.

192.    On September 1, 2011, Plaintiff Gavin paid the September 1, 2011 Rent Payment.

193.    On September 19, 2011, Plaintiff Gavin received the September 19, 2011 Notice.

194.    On September 21, 2011, Defendants generated the September 21, 2011 AUM Admin Charge.

195.    On October 3, 2011, Plaintiff Gavin paid rent for her Home with an installment payment of $50.

196.    On October 19, 2011, Defendants returned the Returned Payment citing Plaintiff Gavin's "current legal status."

197.    Plaintiff Gavin thereafter requested that Defendants use the Returned Payment to pay utility fees as an installment payment that Defendants denied.

198.    On December 6, 2011, Defendants in the course of performing a second inspection that is done annually told the SFHA inspector that Defendants would not pay for grab bars on Plaintiff Gavin's bathtub or shower.

199.    On January 27, 2012, HUD wrote the January 27, 2012 HUD Letter.

200.    On May 14, 2012, Defendants is served with a complaint for the Stove Injury.

201.    On May 15, 2012, Plaintiff Gavin faxed a letter to HUD Secretary Donovan.

202.    On May 22, 2012, Plaintiff Gavin received the May 22, 2012 HUD Regional Administrator letter.

203.    On or about May 23, 2012, Plaintiff Gavin obtained the May 23, 2012 Resident Ledger.

204.    On July 2, 2012, Plaintiff Gavin's counsel could not represent Plaintiff Gavin at trial in Plaintiff Gavin's Case so Plaintiff Gavin, unfamiliar with the rules of court, attended the Arbitration without counsel.

205.    The Arbitration lasted two hours.

206.    The arbitrator at Arbitration told Plaintiff Gavin that the Case would be heard the next day on July 3, 2012.

207.    No one ever told Plaintiff Gavin that the Case would proceed to trial later the morning of July 2, 2012.

208.    Plaintiff Gavin experienced heart palpitations due to extreme stress of the Arbitration and Case.

209.    On July 2, 2012, the SFSC entered a default judgment in Plaintiff Gavin's Case.

210.    On July 4, 2012, the SFSC was closed due to the holiday.

211.    On July 5, 2012, Access provided Plaintiff Gavin with paperwork for an ex parte application and motion to vacate judgment and to return to Access if Plaintiff Gavin had any questions.

212.    On July 6, 2012, Access was closed and Plaintiff Gavin did not know where to go to obtain any assistance.

213.    On July 9, 2012, Plaintiff Gavin attempted to submit at SFSC an ex parte application but the SFSC clerk instructed Plaintiff Gavin that the documents were incorrect.

214.    On July 10, 2012, Plaintiff Gavin filed at SFSC an ex parte application to be heard on Thursday, July 12, 2012.

215.    On July 10, 2012, Plaintiff Gavin received verification from SFHRC that Plaintiff Gavin has an open complaint against Defendants.

216.    On or about July 11, 2012, Plaintiff Gavin received the July 11, 2012 VLSP Letter

217.    On July 12, 2012, a neighbor drove Plaintiff Gavin to SFSC and Judge Quidachay told Plaintiff Gavin to return the next day, Friday, July 13, 2012.

218.    On July 13, 2012, Plaintiff Gavin endured the Wrongful Delay.

219. On July 16, 2012, SFSC clerks were on strike so Plaintiff Gavin left Plaintiff Gavin's ex parte application in the box in SFSC available for claims.

220. On July 17, 2012, Judge Quidachay stated to Plaintiff Gavin the Wrongful Ruling that violated Plaintiff Gavin's right to a jury trial.

221. On July 18, 2012, Plaintiff Gavin wrote the July 18, 2012 SFSC Letter.

222. On July 19, 2012, Plaintiff Gavin visited federal court to inquire about filing a claim.

223. On July 23, 2012, Plaintiff Gavin filed the Complaint.

225. On July 25, 2012, the San Francisco Sheriff evicted Plaintiff Gavin from Plaintiff Gavin's Home.

226. On July 25, 2012, Plaintiff Gavin collapsed twice, was hospitalized and required heart monitoring.

227. Defendants recently removed from Plaintiff Gavin's Home Plaintiff Gavin's Property.

228. Defendants did not provide Plaintiff Gavin with any message regarding taking possession of Plaintiff Gavin's Property.

229. On July 26, 2012, Plaintiff Gavin e-mailed after a phone conversation Mr. Mallen the July 26, 2012 E-mail.

230. The amounts and information Defendants claim in the Wrongful Three Day Notices are inconsistent.  See Exhibit 6.

231. Plaintiff Gavin has therefore not breached the Lease according to the Wrongful Three Day Notices.

232.   Defendants refused and continue to refuse to accept a partial payment.  See Complaint and Verified Complaint.

233.   An actual controversy therefore exists by Defendants' own behavior.

234.   Defendants refuse to account for the exact amount Plaintiff Gavin allegedly owes Defendants or for the exact amount Defendants owe Plaintiff Gavin, if any.

235.   Defendants have fraudulently gained from Plaintff Gavin's money and property by Defendants' Wrongful Conduct.

236.   Defendants have fraudulently seized property from Plaintiff Gavin by Defendants' Wrongful Conduct.

237.   Plaintiff Gavin seeks a judicial determination and declaration of Plaintiff Gavin and Defendants' respective rights and duties that is appropriate at this time to prevent any further harm to Plaintiff Gavin.  See Exhibits A-Q.

238.   The law guarantees Plaintiff Gavin the right of a full and fair hearing concerning any harm Defendants may have caused Plaintiff Gavin.  See Exhibits A-Q.

239.   Plaintiff Gavin has no plain, speedy or adequate remedy available other than injunctive relief.

240.   As a result, Plaintiff Gavin seeks injunctive relief to prevent irreparable injury to Plaintiff Gavin and Plaintiff Gavin's Property.

241.   Plaintiff Gavin seeks injunctive relief in the form of restoration of Plaintiff Gavin's Property to Plaintiff Gavin that is in the public interest to avoid enormous injustice to Plaintiff Gavin.

THIRD CAUSE OF ACTION
(Fraud)

242.   Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

243.   Defendants by Defendants' Wrongful Conduct committed fraud against Plaintiff Gavin thereby nullifying the Wrongful Conduct including Plaintiff's Lease and, *a fortiori*, all Wrongful Conduct subsequent to the alleged formation of Plaintiff's Lease as void *ab initio*.[24]

244.   On or about March 1, 2010, Plaintiff Gavin suffered the Stove Injury.

245.   No one in Plaintiff Gavin's family has violated the Rules.

246.   Defendants violated the PHA Rule.

247.   Defendants had accepted HUD's money for Plaintiff Gavin's rent as of June 2012.

248.   Plaintiff Gavin's medical condition compelled Plaintiff Gavin to make the Parking Space Request to Defendants that Defendants denied.

249.   On August 18, 2011, Kathleen McEvoy at the SF MTA wrote the August 18, 2011 SF MTA Letter.

250.   On August 23, 2011, Plaintiff Gavin and Mr. Polacci attended the August 23, 2011 Hearing where the Sunshine Task Force issued the Decision and Mr. Polacci left in a hurry.

---

[24] Cal. Bus. & Prof. Code § 17200; Cal. Civ. Code § 1709; Cal. Evid. Code § 669; Cal. Pen. Code § 496; 15 U.S.C. § 1601; 18 U.S.C. §§ 1961-1968; 42 U.S.C. § 1983; Macias v. Excel Bldg. Services LLC, 767 F.Supp.2d 1002, 1012 (N.D.Cal. 2011); The MEGA Life & Health Ins. Co. v. Superior Court (2009) 172 Cal.App.4th 1522, 1530; Melendrez v. D & I Investment, Inc. (2005) 127 Cal.App.4th 1238, 1256; Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 1075 (" 'Code of Civil Procedure section 1281.2 authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful.  Nor do courts have any such power under their inherent limited authority to reform contracts. [Citations.]'  (*Armendariz*, *supra*, 24 Cal.4th at pp. 124-125.)"); 6 Angels, Inc. v. Stuart-Wright Mortgage, Inc. (2001) 85 Cal.App.4th 1279, 1286-1287; Sierra-Bay Fed. Land  Bank Assn. v. Superior Court (1991) 227 Cal.App.3d 318, 330-331; Trout v. Taylor (1934) 220 Cal.App. 652, 656 (" 'In view of these authorities the conclusion is inescapable that the deed in question was not voidable but was void *in toto*, a nullity.' ").

260.    On August 24, 2011, Plaintiff Hambolu received the August 24, 2011 Notice that Plaintiff Gavin asserts Defendants issued in retaliation for, among other reasons, the August 23, 2011 Hearing.

261.    Plaintiff Gavin asserts that thereafter Defendants targeted Plaintiff Gavin for retaliation.

262.    On September 1, 2011, Plaintiff Gavin paid the September 1, 2011 Rent Payment.

263.    On September 19, 2011, Plaintiff Gavin received the September 19, 2011 Notice.

264.    On September 21, 2011, Defendants generated the September 21, 2011 AUM Admin Charge.

265.    On October 3, 2011, Plaintiff Gavin paid rent for her Home with an installment payment of $50.

266.    On October 19, 2011, Defendants returned the Returned Payment citing Plaintiff Gavin's "current legal status."

267.    Plaintiff Gavin thereafter requested that Defendants use the Returned Payment to pay utility fees as an installment payment that Defendants denied.

268.    On December 6, 2011, Defendants in the course of performing a second inspection that is done annually told the SFHA inspector that Defendants would not pay for grab bars on Plaintiff Gavin's bathtub or shower.

269.    On January 27, 2012, HUD wrote the January 27, 2012 HUD Letter.

270.    On May 14, 2012, Defendants is served with a complaint for the Stove Injury.

271.    On May 15, 2012, Plaintiff Gavin faxed a letter to HUD Secretary Donovan.

272.    On May 22, 2012, Plaintiff Gavin received the May 22, 2012 HUD Regional Administrator letter.

273.   On or about May 23, 2012, Plaintiff Gavin obtained the May 23, 2012 Resident Ledger.

274.   On July 2, 2012, Plaintiff Gavin's counsel could not represent Plaintiff Gavin at trial in Plaintiff Gavin's Case so Plaintiff Gavin, unfamiliar with the rules of court, attended the Arbitration without counsel.

275.   The Arbitration lasted two hours.

276.   The arbitrator at Arbitration told Plaintiff Gavin that the Case would be heard the next day on July 3, 2012.

277.   No one ever told Plaintiff Gavin that the Case would proceed to trial later the morning of July 2, 2012.

278.   Plaintiff Gavin experienced heart palpitations due to extreme stress of the Arbitration and Case.

279.   On July 2, 2012, the SFSC entered a default judgment in Plaintiff Gavin's Case.

280.   On July 4, 2012, the SFSC was closed due to the holiday.

281.   On July 5, 2012, Access provided Plaintiff Gavin with paperwork for an ex parte application and motion to vacate judgment and to return to Access if Plaintiff Gavin had any questions.

282.   On July 6, 2012, Access was closed and Plaintiff Gavin did not know where to go to obtain any assistance.

283.   On July 9, 2012, Plaintiff Gavin attempted to submit at SFSC an ex parte application but the SFSC clerk instructed Plaintiff Gavin that the documents were incorrect.

284.   On July 10, 2012, Plaintiff Gavin filed at SFSC an ex parte application to be heard on Thursday, July 12, 2012.

285.    On July 10, 2012, Plaintiff Gavin received verification from SFHRC that Plaintiff Gavin has an open complaint against Defendants.

286.    On or about July 11, 2012, Plaintiff Gavin received the July 11, 2012 VLSP Letter.

287.    On July 12, 2012, a neighbor drove Plaintiff Gavin to SFSC and Judge Quidachay told Plaintiff Gavin to return the next day, Friday, July 13, 2012.

288.    On July 13, 2012, Plaintiff Gavin endured the Wrongful Delay.

289.    On July 16, 2012, SFSC clerks were on strike so Plaintiff Gavin left Plaintiff Gavin's ex parte application in the box in SFSC available for claims.

290.    On July 17, 2012, Judge Quidachay stated to Plaintiff Gavin the Wrongful Ruling that violated Plaintiff Gavin's right to a jury trial.

291.    On July 18, 2012, Plaintiff Gavin wrote the July 18, 2012 SFSC Letter.

292.    On July 19, 2012, Plaintiff Gavin visited federal court to inquire about filing a claim.

293.    On July 23, 2012, Plaintiff Gavin filed the Complaint.

294.    On July 24, 2012, USDC judge Hon. Phyllis J. Hamilton issued the Order.

295.    On July 25, 2012, the San Francisco Sheriff evicted Plaintiff Gavin from Plaintiff Gavin's Home.

296.    On July 25, 2012, Plaintiff Gavin collapsed twice, was hospitalized and required heart monitoring. On October 28-23, 2012 Plaintiff Gavin was hospitalized for the same reason.

297.    Defendants recently removed from Plaintiff Gavin's Home Plaintiff Hambolu's Property.

298. Defendants did not provide Plaintiff Gavin with any message regarding taking possession of Plaintiff Gavin Property.

299. On July 26, 2012, Plaintiff Gavin e-mailed after a phone conversation Mr. Mallen the July 26, 2012 E-mail.

300. The amounts and information Defendants claim in the Wrongful Three Day Notices are inconsistent. See Exhibit 6.

301. Plaintiff Gavin has therefore not breached the Lease according to the Wrongful Three Day Notices.

302. Defendants refused and continue to refuse to accept a partial payment. See Complaint and Verified Complaint.

301. An actual controversy therefore exists by Defendants' own behavior.

302. Defendants refuse to account for the exact amount Plaintiff Gavin allegedly owes Defendants or for the exact amount Defendants owe Plaintiff Gavin, if any.

303. Defendants have fraudulently gained from Plaintff Gavin's money and property by Defendants' Wrongful Conduct.

304. Defendants have fraudulently seized property from Plaintiff Gavin by Defendants' Wrongful Conduct.

305. Plaintiff Gavin seeks a judicial determination and declaration of Plaintiff Gavin and Defendants' respective rights and duties that is appropriate at this time to prevent any further harm to Plaintiff Gavin. See Exhibits A-Q.

306. The law guarantees Plaintiff Gavin the right of a full and fair hearing concerning any harm Defendants may have caused Plaintiff Gavin. See Exhibits A-Q.

307. Defendants by Defendants' Wrongful Conduct misrepresented facts to Plaintiff Gavin with knowledge of the facts' falsity with intent to defraud Plaintiff Gavin upon which Plaintiff Gavin justifiably relied resulting in Plaintiff Gavin incurring damages ("Fraud").

308. Defendants' Fraud was intentional, wanton and willful with the intention on the part of the Defendants of thereby depriving Plaintiff Gavin of property, monies, legal rights or otherwise causing Plaintiff Gavin injury. *Murray v. Laborers Union Local no. 324*, 55 F.3d 1445, 1453 (9th Cir. 1995); *Morgan v. Woessner*, 997 F.2d 1244, 1254-1259 (9th Cir. 1993); *Jet Source Charter, Inc. v. Doherty* (2007) 148 Cal.App.4th 1, 8-9.

309. Defendants' Fraud was despicable and subjected Plaintiff Gavin to a cruel and unjust hardship in conscious disregard of Plaintiff Gavin's rights so as to justify an award of exemplary damages. Cal. Civ. Code § 3294; Century Surety Co. v. Polisso (2006) 139 Cal.App.4th 922, 958-959; Boyle v. Lorimar Productions, Inc., 13 F.3d 1357, 1360 (9th Cir. 1994); Las Palmas Associates v. Las Palmas Center Associates (1991) 235 Cal.App.3d 1220, 1238-1240.

310. Plaintiff Gavin seeks trebling of Plaintiff Gavin's damages due to Defendants' unfair, deceptive acts, practices and methods of competition that amounted, in Plaintiff Gavin's opinion to racketeering, undue influence, recklessness and sale of stolen goods. Cal. Pen. Code § 496; 18 U.S.C. §§ 1962(a), 1964(c); Citizens of Humanity, LLC v. Costco Wholesale Corp. (2009) 171 Cal.App.4th 1, 16-17.

FOURTH CAUSE OF ACTION
(Negligence)

311. Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

312. On or about March 1, 2010, Plaintiff Gavin suffered the Stove Injury.

313. No one in Plaintiff Gavin's family has violated the Rules.

314.   Defendants violated the PHA Rule.

315.   Defendants had accepted HUD's money for Plaintiff Gavin's rent as of June 2012.

316.   Plaintiff Gavin's medical condition compelled Plaintiff Gavin to make the Parking Space Request to Defendants that Defendants denied.

317.   On August 18, 2011, Kathleen McEvoy at the SF MTA wrote the August 18, 2011 SF MTA Letter.

318.   On August 23, 2011, Plaintiff Gavin and Mr. Polacci attended the August 23, 2011 Hearing where the Sunshine Task Force issued the Decision and Mr. Polacci left in a hurry.

319.   On August 24, 2011, Plaintiff Gavin received the August 24, 2011 Notice that Plaintiff Gavin asserts Defendants issued in retaliation for, among other reasons, the August 23, 2011 Hearing.

320.   Plaintiff Gavin asserts that thereafter Defendants targeted Plaintiff Gavin for retaliation.

321.   On September 1, 2011, Plaintiff Gavin paid the September 1, 2011 Rent Payment.

322.   On September 19, 2011, Plaintiff Gavin received the September 19, 2011 Notice.

323.   On September 21, 2011, Defendants generated the September 21, 2011 AUM Admin Charge.

324.   On October 3, 2011, Plaintiff Gavin paid rent for her Home with an installment payment of $50.

325.   On October 19, 2011, Defendants returned the Returned Payment citing Plaintiff Gavin's "current legal status."

326. Plaintiff Gavin thereafter requested that Defendants use the Returned Payment to pay utility fees as an installment payment that Defendants denied.

327. On December 6, 2011, Defendants in the course of performing a second inspection that is done annually told the SFHA inspector that Defendants would not pay for grab bars on Plaintiff Gavin's bathtub or shower.

328. On January 27, 2012, HUD wrote the January 27, 2012 HUD Letter.

329. On May 14, 2012, Defendants is served with a complaint for the Stove Injury.

330. On May 15, 2012, Plaintiff Gavin faxed a letter to HUD Secretary Donovan.

331. On May 22, 2012, Plaintiff Gavin received the May 22, 2012 HUD Regional Administrator letter.

333. On or about May 23, 2012, Plaintiff Gavin obtained the May 23, 2012 Resident Ledger.

334. On July 2, 2012, Plaintiff Gavin's counsel could not represent Plaintiff Gavin at trial in Plaintiff Gavin's Case so Plaintiff Gavin, unfamiliar with the rules of court, attended the Arbitration without counsel.

335. The Arbitration lasted two hours.

336. The arbitrator at Arbitration told Plaintiff Gavin that the Case would be heard the next day on July 3, 2012.

337. No one ever told Plaintiff Gavin that the Case would proceed to trial later the morning of July 2, 2012.

338. Plaintiff Gavin experienced heart palpitations due to extreme stress of the Arbitration and Case.

339. On July 2, 2012, the SFSC entered a default judgment in Plaintiff Gavin's Case.

340. On July 4, 2012, the SFSC was closed due to the holiday.

341. On July 5, 2012, Access provided Plaintiff Gavin with paperwork for an ex parte application and motion to vacate judgment and to return to Access if Plaintiff Gavin had any questions.

342. On July 6, 2012, Access was closed and Plaintiff Gavin did not know where to go to obtain any assistance.

343. On July 9, 2012, Plaintiff Gavin attempted to submit at SFSC an ex parte application but the SFSC clerk instructed Plaintiff Gavin that the documents were incorrect.

344. On July 10, 2012, Plaintiff Gavin filed at SFSC an ex parte application to be heard on Thursday, July 12, 2012.

345. On July 10, 2012, Plaintiff Gavin received verification from SFHRC that Plaintiff Gavin has an open complaint against Defendants.

346. On or about July 11, 2012, Plaintiff Gavin received the July 11, 2012 VLSP Letter

347. On July 12, 2012, a neighbor drove Plaintiff Gavin to SFSC and Judge Quidachay told Plaintiff Gavin to return the next day, Friday, July 13, 2012.

348. On July 13, 2012, Plaintiff Gavin endured the Wrongful Delay.

349. On July 16, 2012, SFSC clerks were on strike so Plaintiff Gavin left Plaintiff Gavin's ex parte application in the box in SFSC available for claims.

350. On July 17, 2012, Judge Quidachay stated to Plaintiff Gavin the Wrongful Ruling that violated Plaintiff Gavin's right to a jury trial.

351. On July 18, 2012, Plaintiff Gavin wrote the July 18, 2012 SFSC Letter.

352.    On July 19, 2012, Plaintiff Gavin visited federal court to inquire about filing a claim.

353.    On July 23, 2012, Plaintiff Gavin filed the Complaint.

354.    On July 25, 2012, the San Francisco Sheriff evicted Plaintiff Gavin from Plaintiff Gavin's Home.

356.    On July 25, 2012, Plaintiff Gavin collapsed twice, was hospitalized and required heart monitoring.

357.    Defendants recently removed from Plaintiff Gavin's Home Plaintiff Gavin's Property.

358.    Defendants did not provide Plaintiff Gavin with any message regarding taking possession of Plaintiff Gavin Property.

359.    On July 26, 2012, Plaintiff Gavin e-mailed after a phone conversation Mr. Mallen the July 26, 2012 E-mail.

360.    The amounts and information Defendants claim in the Wrongful Three Day Notices are inconsistent.  See Exhibit 6.

361.    Plaintiff Gavin has therefore not breached the Lease according to the Wrongful Three Day Notices.

362.    Defendants refused and continue to refuse to accept a partial payment.  See Complaint and Verified Complaint.

363.    An actual controversy therefore exists by Defendants' own behavior.

364.    Defendants refuse to account for the exact amount Plaintiff Gavin allegedly owes Defendants or for the exact amount Defendants owe Plaintiff Gavin, if any.

365.   Defendants have fraudulently gained from Plaintiff Gavin's money and property by Defendants' Wrongful Conduct.

366.   Defendants have fraudulently seized property from Plaintiff Gavin by Defendants' Wrongful Conduct.

367.   Plaintiff Gavin seeks a judicial determination and declaration of Plaintiff Gavin and Defendants' respective rights and duties that is appropriate at this time to prevent any further harm to Plaintiff Gavin.  See Exhibits A-Q.

368.   The law guarantees Plaintiff Gavin the right of a full and fair hearing concerning any harm Defendants may have caused Plaintiff Gavin.  See Exhibits A-Q.

369.   Defendants had a duty to Plaintiff Gavin not to commit Wrongful Conduct against Plaintiff Gavin that Defendants breached that was the legal and proximate cause of Plaintiff Gavin's damages ("Negligence").

370.   Plaintiff Gavin seeks trebling of Plaintiff Gavin's damages due to Defendants' unfair, deceptive acts, practices and methods of competition that amounted, in Plaintiff Gavin's opinion to Fraud, Negligence, Breach of Contract, racketeering, undue influence, recklessness and sale of stolen goods.  Cal. Pen. Code § 496; 18 U.S.C. §§ 1962(a), 1964(c); Citizens of Humanity, LLC v. Costco Wholesale Corp. (2009) 171 Cal.App.4th 1, 16-17.

FIFTH CAUSE OF ACTION
(Breach of Contract)

371.   Plaintiff Gavin realleges the above paragraphs as though fully set forth herein.

372.   On or about March 1, 2010, Plaintiff Gavin suffered the Stove Injury.

373.   No one in Plaintiff Gavin's family has violated the Rules.

374.   Defendants violated the PHA Rule.

375. Defendants had accepted HUD's money for Plaintiff Gavin u's rent as of June 2012.

376. Plaintiff Gavin's medical condition compelled Plaintiff Gavin to make the Parking Space Request to Defendants that Defendants denied.

377. On August 18, 2011, Kathleen McEvoy at the SF MTA wrote the August 18, 2011 SF MTA Letter.

378. On August 23, 2011, Plaintiff Gavin and Mr. Polacci attended the August 23, 2011 Hearing where the Sunshine Task Force issued the Decision and Mr. Polacci left in a hurry.

379. On August 24, 2011, Plaintiff Gavin received the August 24, 2011 Notice that Plaintiff Gavin asserts Defendants issued in retaliation for, among other reasons, the August 23, 2011 Hearing.

380. Plaintiff Gavin asserts that thereafter Defendants targeted Plaintiff Gavin for retaliation.

381. On September 1, 2011, Plaintiff Gavin paid the September 1, 2011 Rent Payment.

382. On September 19, 2011, Plaintiff Gavin u received the September 19, 2011 Notice.

383. On September 21, 2011, Defendants generated the September 21, 2011 AUM Admin Charge.

384. On October 3, 2011, Plaintiff Gavin paid rent for her Home with an installment payment of $50.

385. On October 19, 2011, Defendants returned the Returned Payment citing Plaintiff Gavin's "current legal status."